# Simmons, Appellant, *v.* Pennsylvania Railroad.

*Negligence—Railroads—Safety gates—City ordinance.*

In an action against a railroad company to recover damages for personal injuries where it appears that the plaintiff approached a grade crossing of the defendant railroad when the safety gates were lowered, and that the injuries were sustained by reason of the horse taking fright at the whistle of a passing locomotive, it is not error for the court to charge that the fact that the safety gates were kept down for a period of time longer than that allowed by the city ordinance was not the proximate cause of the accident, and should not be taken into consideration by the jury.

*Negligence—Charge of court—Comment on evidence.*

The court has a right in charging the jury to express an opinion as to the evidence or as to the witnesses, provided nothing is said to bind the jury or preclude them from deciding the case for themselves on the evidence.

A statement by the trial judge in the course of his charge that the reply of a witness seemed to be that of a " manly man," is not ground for reversing the judgment.

*Negligence—Master and servant—Sounding whistle at the crossing— Fright of horse.*

In an action against a railroad company to recover damages for personal injuries resulting from a fright of a horse at a grade crossing where it appears that the horse was frightened by a whistle and escaping steam, a verdict for defendant will not be disturbed where the question is fairly left to the jury to determine whether or not the act of the engineer in blowing the whistle and letting off steam was in the line of his duty.

Since the scope of a servant's employment is necessarily dependent upon circumstances, a hard and fast rule cannot be laid down as to the scope of any particular employment; and it is ordinarily a question for the jury whether or not a particular act comes within the scope of a servant's employment.

Argued March 25, 1901.   Appeal, No. 229, Jan. T., 1900, by plaintiff, from judgment of C. P. No. 1, Phila. Co., March T., 1899, No. 467, on verdict for defendant in case of Jacob J. Simmons *v.* Pennsylvania Railroad Company.   Before MITCH-ELL, FELL, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Trespass to recover damages for personal injuries.   Before BEITLER, J.

At the trial it appeared that on October 14, 1897, plaintiff while driving a one-horse wagon approached a grade crossing of

defendant's road. As he approached the crossing the safety gates were lowered, and according to plaintiff's testimony were kept down for a period of time longer than that permitted by the city ordinance. While plaintiff was waiting, a locomotive passed, and his horse took fright at the whistle and escaping steam, and pushed through the gate and plaintiff was thrown against the moving train.

The court charged in part as follows:

It was the plaintiff's duty to place himself on that road, when he found the gates down, in such a position as would enable him to take the best care of himself, under the circumstances, that he could. If he did not take care of his own safety,—if you find from the evidence he did not, he was guilty of negligence and he cannot recover, no matter what the negligence of the defendant company had been. [There is no question but that prior to the coming of that train to the crossing these gates were down; whether they had been down nine, five or one minute had nothing at all, I say to you, to do with this case,—the fact that they were down was a warning that the train was approaching, and I believe no court has attempted to say, or no court will attempt to say, at what moment of time a gateman must put down a gate.] [3] Whether they were down nine minutes or less, as that train was approaching Broad street might have some bearing upon the credibility of the witnesses testifying in this case or some bearing upon the weight you will give to the testimony of the witness of the plaintiff or defendant. The plaintiff's witnesses do say that gate was down for many minutes before the train came to that crossing, whereas the testimony on the part of the defendant's witnesses put it that it was lowered just before the train came to the crossing.

[On the part of the defendant there was, so far as has been shown, every person on the train and about that locality has been called and their testimony is, without going into details, that no whistle was blown by that engine until after the engine had crossed Moyamensing avenue, and gotten up to near the weighmaster's office, which I understand to be somewheres two or three hundred feet west of the crossing, and that then the whistle was blown because the engineer then discovered that this horse was plunging towards his train and that the whistle

was blown as the only signal that he could give to have brakes put on that train and have the train stopped ;] [1] that the engine, while it had the ordinary steam connections to apply power by steam to the brakes, was not connected with the rest of the train by air brakes, a freight train not equipped by air brakes, and while the air would operate to stop the engine, with a train of thirty-seven cars behind it, the momentum would carry the whole train quite a distance unless the brakes on the train were applied. The testimony of everybody in connection with the gates, servants and everybody at that locality at that time, is that the whistle was blown once, and that it was recognized as the only signal which could be given by the engineer to have the brakes applied to stop the train.] [2]

Defendant's points were as follows :

Under the evidence in the case, the act of the gate keeper in lowering the safety gates and keeping them down for a longer time than is allowed by the city ordinance (as testified on the part of the plaintiff), cannot be held to be the proximate cause of the accident and should not be taken into consideration by the jury in deciding the issue of fact raised by the pleadings in the case. *Answer :* I affirm that point. [4]

If the jury believe that the sounding of the whistle and blowing off steam, or either of these acts, was caused by the wilful and malicious conduct of an employee of the defendant, not acting in the line of his duty, the defendant cannot be held responsible for such conduct, and the jury should find for the defendant. *Answer :* That requires me to say a word to you upon a phase of the case not argued to you by counsel. If a merchant sends his driver upon the street to deliver a load of goods, that driver is in the discharge of a duty and services of his employ, and if he negligently runs over anybody upon the highway the employer must pay the bill, he must respond in damages ; but if the employer sends a man out on the highway to deliver a lot of goods and the driver sees a man upon the highway that he has a grudge against and says to himself, " I have a horse and loaded wagon and I am going to run that man down," and whips the horse up and runs down the man, the driver is responsible, criminally and civilly, and the employer is not, because, that is a wilful and malicious act of the driver and not an act done in the discharge of his duty to his

employer.   Whether the facts in this case fit that principle of law, I leave for you to decide.   The plaintiff testifies that the engineer laughed at him after the first blast of the whistle and that in point of fact, even after the second blast of the whistle he had his horse well under control ; that this man seeing the predicament he was in, laughed at him and discharged this cloud of steam.   If you were sitting in the court of quarter sessions and the engineer was on trial for having done that thing, and it was admitted that the engineer had laughed at this man when he saw the horse rearing and had blown the whistle the second time and still continued to enjoy the predicament this man was in, and absolutely regardless of his safety and the danger he was in, let off steam, so that the accident was bound to happen, you would be justified in finding that engineer guilty of a criminal act.   If you find such to be the case here, you have the right to find what the engineer did was criminal on his part, wanton on his part, and that the company is not responsible for that act of his.   I want to add to that: when the engineer was asked, when his attention was called to the statement of the plaintiff that he was laughing at him when he blew the whistle the second time and let off steam, while he did not say he was not laughing at him, he made the reply that seemed to me to be the reply of a manly man, he saw nothing in the position of that man to make him laugh at him. [6]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were (1–6) above instructions, quoting them.

*Henry C. Terry,* with him *Anthony A. Hirst,* for appellant.—While an ordinance in itself was not evidence of negligence, it may be considered with other evidence in ascertaining whether the defendant was guilty of negligence : Lederman v. Penna. R. R. Co., 165 Pa. 118 ; Foote v. American Product Co., 195 Pa. 195.

In considering what is the proximate cause of a certain occurrence, the jury must determine whether the facts constitute a continuous succession of events so linked together that they become a natural whole, or whether they be so broken that they become independent, and the final result cannot be said to be the natural and probable consequence of the primary

cause. This rule is not affected by the lapse of time between the several occurrences or by the distance between the places involved: Haverly v. State Line, etc., R. R. Co., 135 Pa. 50; Penna. R. R. Co. v. Hope, 80 Pa. 377; Penna. & N. Y. Canal & R. R. Co. v. Lacey, 89 Pa. 458; Lehigh Valley R. R. Co. v. McKeen, 90 Pa. 122; Koch v. Williamsport, 195 Pa. 488; Phila.; Wilmington & Baltimore R. R. Co. v. Brannen, 17 W. N. C. 227; Billman v. Indianapolis, etc., R. R. Co., 76 Indiana, 166; McDonald v. Snelling, 14 Allen, 296; Vandenburgh v. Truax, 4 Denio, 464.

*George Tucker Bispham,* for appellee.—The fact that the defendant kept the safety gates down for a longer time than is allowed by the city ordinance cannot be held to be the proximate cause of the accident: McAnally v. Penna R. R. Co., 194 Pa. 464; Wood v. Penna. R. R. Co., 177 Pa. 306.

The charge upon the question of the defendant's alleged negligence was entirely sound: Penna. Co. v. Toomey, 91 Pa. 256; Phila., Germantown, etc., R. R. Co. v. Wilt, 4 Wharton, 143; Pittsburg, etc., Pass. Ry. Co. v. Donoahue, 70 Pa. 119; Scanlon v. Suter, 158 Pa. 275.

OPINION BY MR. JUSTICE POTTER, April 29, 1901:

There is no substantial reason for complaint in the portions of the charge assigned for error in the first and second specifications, when they are considered in the connection in which they were delivered. The learned trial judge first commented on the testimony offered upon the part of the plaintiff, and afterwards upon that offered upon the part of the defendant. An examination of the charge, shows that the rather sweeping terms used in referring to the persons testifying, were fairly limited to the evidence for the defendant, by the classification employed. These assignments are therefore overruled. The trial judge further instructed the jury that the fact of the safety gates having been lowered and kept down for a period of time longer than that allowed by the city ordinance, had nothing to do with the case. His instructions in this respect are assigned as error in the third and fourth specifications. The learned trial court was right. The lowering of the gates and keeping them down, could not be considered as the proximate cause of the accident. According

to the plaintiff's own testimony, and that of his witnesses, the horse was frightened by the escape of steam from the engine and the blowing of the whistle.   The authorities cited by appellant in which certain ordinances were properly offered in evidence, were cases in which the proximate causes of the accidents lay in acts which were in themselves violations of the ordinances. In Foote v. American Product Company, 195 Pa. 195, the accident was caused by the failure to observe the rule of the road and the ordinance was introduced as evidence as to what the law of the road was.   In Lederman v. Pennsylvania Railroad Co., 165 Pa. 118, the allegation was excess of speed, and the ordinance was offered as evidence of what the lawful rate of speed was.   For such purposes as these, ordinances are properly admitted; but never for the purpose of showing that the violation of the terms of an ordinance in itself constitutes negligence. In the present case, the use of safety gates is manifestly a measure of prudence, intended for the prevention of accident.   The fact that plaintiff was delayed by the lowering of the gates, and their being kept down for an unusual length of time, can have no bearing upon the question of defendant's negligence in sounding the whistle of its engine, and in blowing off steam.   There is no merit in the third and fourth assignments of error and they are, therefore, overruled.   The instructions of the court upon the question of the defendant's alleged negligence, are the subject of complaint, in the fifth, sixth, seventh and eighth assignments of error.   They were argued together, and will be so considered here.   Great stress is laid by appellant upon the statement by the trial judge in the course of his charge, that the reply of the engineer seemed to be that of a " manly man."   We see no reason for criticism here.   The court has a right to express an opinion as to the evidence or as to the witnesses; providing nothing is said to bind the jury or preclude them from deciding the case for themselves on the evidence.

Among the points submitted by the defendant was the sixth, which was as follows: " If the jury believe that the sounding of the whistle and blowing off steam, or either of these acts, was caused by the wilful and malicious conduct of an employee of the defendant, not acting in the line of his duty, the defendant cannot be held responsible for such conduct, and the jury should find for the defendant."   The court did not affirm this

point as it stood, but made an explanation to the jury of the law as applied to that phase of the case, and in this explanation, it is alleged by the counsel for appellant, there was error. The question was fairly left to the jury to determine whether or not the act of the engineer in blowing the whistle and in letting off steam, was in the line of his duty. Since the scope of the servant's employment is necessarily dependent on circumstances, a hard and fast rule cannot be laid down as to the scope of any particular employment; and it is ordinarily a question for the jury whether or not a particular act comes within the scope of a servant's employment: Schimpf v. Harris, 185 Pa. 46 ; Guinney v. Hand, 153 Pa. 404. Under the circumstances of this case the only basis upon which the jury could conclude that the engineer was acting outside the line of his duty, was by finding that he blew the whistle and let off the steam, in absolute disregard of the dangerous predicament of the plaintiff; and that his action in so doing, was wilful and malicious and for the gratification of his own wanton purpose. But considered in connection with other parts of the charge, it is manifest that the court did not intend to give the jury any binding instruction as to the question of the engineer acting without the scope of his employment. It is very evident that the charge as a whole, could not have been misleading to the jury.

In response to the plaintiff's third point for charge the jury were instructed : " That a wanton and unnecessary blowing of the whistle of an engine, on a common highway crossing, is negligence in law."

And again in the fourth point : " That if the jury believe from the evidence that the engineer discharged, or blew off steam from the engine, while on a common crossing, and in an unusual and extraordinary manner, and that same caused the fright of plaintiff's horse and subsequent injuries to plaintiff, then defendant is guilt of negligence and plaintiff is entitled to a verdict." This latter point being properly qualified by calling the attention of the jury to the fact, that they must in addition consider whether plaintiff had exercised due care for his own safety.

And yet again by the averments of the plaintiff's fifth point for charge, which was as follows : " If the jury believe from the evidence that plaintiff's horse was kind and gentle, and that plaintiff exercised due care while waiting the approach and pass-

age of the train, and that his horse was frightened by either a wanton and unnecessary blowing of the whistle, or by an extraordinary blowing off of steam, or both, on a common crossing, then plaintiff is not guilty of contributory negligence and is entitled to a verdict."

The verdict of the jury in favor of the defendant is necessarily predicated on a finding of all essential questions of fact as claimed by it; and there was an abundance of evidence to warrant the jury in so finding.

There is nothing in either of the specifications of error that calls for a reversal of the judgment.

Judgment is affirmed.