## Coles et al. *v.* Sutphen, Appellant.

458

Argued March 27, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Paul A. Koontz,* for appellant.

*Ellis William van Horn, Jr.,* with him *Richard C. Snyder,* for appellees.

OPINION BY ROSS, J., September 27, 1950:

This is an action of trespass for the conversion of certain ore crushing machinery. The plaintiffs, James G. Coles and J. Harry Simon, secured a verdict in the amount of $1,200. Defendant's motions for judgment n.o.v. and for a new trial were overruled, judgment entered on the verdict, and the defendant took this appeal.

The plaintiffs conducted the business of mining, quarrying and removing certain ores from various parcels of land in Bedford County. On or about June 8, 1925, the plaintiff Coles became the owner of a certain tract of land in that county, and on or about December 20, 1940, the plaintiffs purchased a stone crusher and conveyor which they caused to be erected upon the Coles tract. This equipment was used by the plaintiffs

in their business for a time, but then they were forced to suspend operations because of inability to obtain a priority for materials during World War II. The stone crusher and conveyor were packed with preservative grease and left standing upon the land. On or about February 18, 1946, the Coles tract was conveyed to one Bussard by a deed of conveyance reserving to the grantor the mineral rights and specifically excepting the crusher and conveyor. This deed was recorded. Subsequently, on or about April 30, 1946, the land upon which the equipment was located was conveyed by Bussard to Peter O. Sutphen, the defendant herein. The latter deed made no reference to the crusher or conveyor.

At the time of the events which led to the instant dispute, the defendant operated a wood manufacturing plant in Everett, which in February of 1947 was being supplied with timber cut from a tract of land which adjoined the Coles tract. The defendant's son-in-law, R. A. MacIntosh, was "in charge" of the defendant's timber cutting operations on this land. It appeared that the duties of MacIntosh were not confined to timber cutting. He was the defendant's assistant in the Everett office and as such had charge of making up payrolls and upon occasion signed business papers for the defendant. When the defendant was absent from his office MacIntosh was "in charge". On February 12, 1947, while the defendant was "away on a trip", one Burket walked into the defendant's office and proffered $20.00 to MacIntosh as payment for the crusher and conveyor. MacIntosh testified (as a witness called by the plaintiffs) that he inquired whether Burket had been "in contact with" the defendant and his attorney. Upon receiving an affirmative answer, MacIntosh accepted the $20.00 and executed the following writing: "Scrap iron—old mine stone crusher on Coles farm $20.00 Received payment Peter O. Sutphen per R. A. MacIntosh".

MacIntosh put the $20.00 in the defendant's office safe. Shortly thereafter, Burket and his associate, Clark, entered upon the defendant's land and broke up and removed the crusher and conveyor. The plaintiffs, upon discovering that their equipment had been removed from the defendant's land, went to the office of the defendant, showed him the paper signed by MacIntosh, and said, "You sold our equipment." To this accusation the defendant replied, "It was nothing but junk." At no time did the defendant offer to return the $20.00 to Burket or otherwise attempt to rescind the transaction.

The plaintiffs' evidence established that the defendant's agent, MacIntosh, accepted twenty dollars from Burket, that he gave him a writing acknowledging that the money was received as payment for the mine crusher and conveyor and that shortly thereafter Burket and Clark entered upon the defendant's land and removed the plaintiffs' equipment. These circumstances form an adequate basis upon which a jury could predicate a finding that there had been a conversion of the plaintiffs' machinery by MacIntosh. A conversion may be committed by disposing of a chattel by a sale, lease, pledge, gift or other transaction intending to transfer a proprietary interest in it: Restatement, Torts, sec. 223(e); *Croft v. Jennings,* 173 Pa. 216, 33 A. 1026; *Bernstein v. Hineman,* 86 Pa. Superior Ct. 198; *Beadling v. Moore,* 93 Pa. Superior Ct. 544.

The question remains, however, whether there was evidence before the jury which would justify the imposition of liability upon the defendant for the tort of his servant. We have concluded that this question must be answered in the affirmative as it was in the court below.

A master is subject to liability for a trespass or conversion caused by an act done by a servant within the scope of his employment. Restatement, Agency,

sec. 244; Mechem on Agency, 2nd Ed., sec. 1922. "Since the scope of the servant's employment is necessarily dependent on circumstances, a hard and fast rule cannot be laid down as to the scope of any particular employment; and it is ordinarily a question for the jury whether or not a particular act comes within the scope of a servant's employment." *Simmons v. Pennsylvania R.R. Co.*, 199 Pa. 232, 238, 48 A. 1070; *Allen v. Bosternock*, 107 Pa. Superior Ct. 332, 337, 163 A. 336; *Orr v. William J. Burns International Detective Agency*, 337 Pa. 587, 12 A. 2d 25. Where the authority of an agent is to be implied from the conduct of the parties the fact and scope of the agency is for the jury. *Singer Mfg. Co. v. Christian*, 211 Pa. 534, 60 A. 1087. The jury by its verdict resolved this issue in favor of the plaintiffs and the evidence supports its finding.

The defendant contends, however, that the issue of MacIntosh's agency or scope of his employment at the time of the conversion should not have been submitted to the jury, his theory being as follows: The plaintiffs called MacIntosh as their witness and consequently were bound by his testimony. MacIntosh testified that he had not been "authorized"—obviously meaning *expressly* authorized—to sell the equipment, and, therefore, it must be said as a matter of law that the defendant is not liable for the act of MacIntosh in disposing of such equipment. The difficulty with the defendant's argument is that a master may be liable for the tort of his servant even though the act which resulted in the commission of the tort was done without his direct authority. In *Brennan v. Merchant & Co.*, 205 Pa. 258, 261, 54 A. 891, it was said: "A master is liable for the tortious acts of his servant done in the course of his employment and within the general scope of his authority. His presence or absence when the act is performed, *and whether it is done with or without his*

*direct authority,* does not affect the question of the master's liability to the party injured." (Italics supplied.) "The master who puts the servant in a place of trust or responsibility, and commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury upon another": *Orr v. William J. Burns Detective Agency,* 337 Pa. 587, 590, 591, 12 A. 2d 25, supra; *Brennan v. Merchant & Co., Inc.,* 205 Pa. 258, 261, 54 A. 891, supra; *Pilipovich v. Pittsburgh Coal Co.,* 314 Pa. 585, 589, 590, 172 A. 136; *Sebastianelli v. C. Simpson Co.,* 152 Pa. Superior Ct. 203, 207, 31 A. 2d 570.

A good statement of the principle which governs the determination of the question herein involved is to be found in Mechem on Agency, 2nd Ed., sec. 1922, where it is said: "Even though the agent or servant may not have been guilty of anything which may technically be termed negligence he may yet without any wilful or malicious purpose of his own and solely in the effort to perform the principal's or master's business, have trespassed upon the person or property of another or converted the latter's property to the master's use. Where this is the direct and immediate result of the master's directions the liability would be plain. So it would where it is the result of the master's failure to give reasonably specific directions or instructions, or of his other similarly misleading conduct. But even in other cases, if what the servant or agent did is fairly to be regarded as a natural and proximate consequence of what he was set to do, and was done during and as a part of that act for the master's benefit—it will be an act within the course of the employment for which the master will be liable."

Reviewing the record in the light most favorable to the plaintiffs together with the inferences therefrom, as we are required to do in view of the verdict, it is our conclusion that the learned court below correctly refused to enter judgment n.o.v. for the defendant.

In support of his motion for a new trial, in addition to the usual contention that the verdict was against the weight of the evidence, the defendant complains of certain parts of the trial court's charge—to which he took no exception—and the admission of certain opinion testimony relative to the measure of damages.

A motion for a new trial is directed to the sound discretion of the court below, and on appeal the only question reviewed is whether it properly exercised that discretion. The refusal of a new trial will be reversed only upon a showing that the court manifestly abused its discretion, and upon review we read the testimony only to ascertain whether the discretion has been abused (*Holt v. Pariser*, 161 Pa. Superior Ct. 315, 54 A. 2d 89) and in this case we find no abuse of discretion.

Judgment affirmed.