## Spickler v. Lombardo (No. 3)[1]

1. For prior opinions, see 32 Somerset Legal Journal 16 (1976) and 33 Somerset Legal Journal 340 (1977).

592

*James A. Kudasik,* for plaintiff.
*Eugene E. Fike, III,* for defendants.
*Frank S. Lucente,* for additional defendants.

COFFROTH, *P.J.,* August 15, 1977—This case is here on additional defendants' preliminary objections to the complaint filed against them by defendants claiming that additional defendants are liable to plaintiff, solely or jointly or severally with defendants, for damages arising from the wrongful conversion of personal property. The personal property is the same which is the subject matter of plaintiff's action against defendants in assumpsit to recover purchase money paid for the property and breach of warranty of title, with an alternative count in trespass alleging fraudulent misrepresentations of title.

The preliminary objections contain seven paragraphs stating the grounds relied on for relief, which can be summarized as follows: (1) Plaintiff by filing preliminary objections to defendants' complaint against additional defendants acknowledges that defendants have no claim against additional defendants (paragraph 7 of preliminary objections); (2) Defendants' claim is barred by the statute of limitations (paragraph 6 of preliminary objections); (3) Defendants' claim is res judicata

(paragraph 2 of preliminary objections); and (4) The complaint states no cause of action (paragraphs 1, 3, 4 and 5 of preliminary objections).

Although not stated in the objections, counsel for additional defendants also argued that the avrments of fraud in the complaint lack the requisite particularity and are scandalous and impertinent.

We shall deal with the objections above stated under appropriate headings.

## PLAINTIFF 'S PRELIMINARY OBJECTIONS

Additional defendants contend that plaintiff's preliminary objections to defendants' complaint against additional defendants are an acknowledgement that defendants have no claim against additional defendants. There is no merit to this contention for several reasons:

(1) What plaintiff acknowledges concerning defendants' claim against additional defendants is immaterial; such a claim must be judged on its merits irrespective of plaintiff's opinion of it. Plaintiff and additional defendants may not so readily dispose of a claim between defendants and additional defendants.

(2) At the argument, plaintiff withdrew his preliminary objections.

(3) In any event, plaintiff has no right to plead to defendants' complaint against the additional defendants. See Greater Lebanon Hotel v. Braman, 9 Lebanon 184 (1962).[2]

---

2. Plaintiff may not even file preliminary objections against joinder. See Mullarkey v. Lower Bucks County Hospital, 49 D.&C.2d 90 (1970); 8 Goodrich-Amram 2d §2255(b): 1. If however, objections to joinder on the ground of lateness are

## STATUTE OF LIMITATIONS

The six-year statute of limitations may not be raised by preliminary objections, but only in new matter under Pa. R.C.P. 1017, 1030 and 1045(b): Spickler v. Lombardo, 32 Somerset 16 (1976).

## RES JUDICATA

The basis of this objection is that, according to the averments of the complaint, the personal property in question was converted by additional defendants when they exposed the same to execution as the property of one Coleman (not a party to this action), and caused it to be sold, and that those legal proceedings are now res judicata as to any adverse claim for the property levied on and sold. No authority for this contention is cited, and it must be rejected for two reasons:

(1) Res judicata is an affirmative defense which cannot be raised on preliminary objections and must be pleaded in new matter under Pa. R.C.P. 1030 and 1045(b): 2 Goodrich-Amram 2d §1030:1.3.

(2) Defendants (and plaintiff) were not parties to the prior legal proceedings and were not bound by the judgment rendered therein against Paul

---

properly filed by another party, a plaintiff's consent or objection to the joinder may weigh heavily upon the question of whether the 60-day rule should be waived. See Upstill v. Jamesway (No. 4), 33 Somerset 205, 207 (1976); Matsik v. Anderson, 30 Somerset 281, 282 (1975), and cases therein cited. To protect plaintiff's right of objection on the ground of prejudice from late joinder, a petition for such joinder should precede joinder. See 8 Goodrich-Amram 2d §2253:3.1; compare Barkman v. Washington Mutual (No. 2), 29 Somerset 93, 96-7 (1971).

Coleman. Nor were they a party to the execution on said judgment in which additional defendants caused the personal property in question to be levied on and sold as the property of Coleman. Although defendants, or plaintiff or any other claimant, had the right to file a property claim in those execution proceedings and to initiate sheriff's interpleader proceedings in which a judgment with res judicata effect might result, they had no duty to file such claim, nor even to prosecute such a claim to judgment had it been filed; and until such judgment is rendered there is no binding res judicata effect upon such other parties as respects their claim to the property in suit. See Miller v. Feldstein, 420 Pa. 232, 216 A.2d 619 (1966); 4 Goodrich-Amram §§3201-1 and 3202-4.

An execution creditor may and should protect himself against liability for trespass or conversion resulting from an execution sale of property not belonging to the debtor by discovery in aid of execution under Pa. R.C.P. 3117. Rule 3118 may not be used to adjudicate title. See Greater Valley Terminal Corp. v. Goodman, 415 Pa. 1, 202 A.2d 89 (1964); 3 Goodrich-Amram §3118(a)-2 and 3. Nor can the execution plaintiff initiate sheriff's interpleader proceedings. See Pa. R.C.P. 3202(b) and 3 Goodrich-Amram §3202-1.

## FAILURE TO STATE CAUSE OF ACTION

The objections filed for failure to state a cause of action are defective on two grounds:

(1) The objections complain that the pleading fails to state a cause of action which is in effect a demurrer, but the objections do not expressly contain a demurrer nor do they request dismissal which is the consequence of a sustained demurrer

(unless the pleading is properly amended). Every pleading shall specify the relief demanded: Pa. R.C.P. 1021. These objections seek to strike off the complaint instead of to dismiss. A motion to strike off a pleading is proper where the form of the pleading does not conform to law or rule of court or because of impertinent or scandalous matter, as distinguished from a demurrer: Pa. R.C.P. 1017(b)(2) and (4). Nevertheless, the intent of the pleading is to demur and we would not refuse to consider a demurrer merely because the prayer for relief is improperly phrased. A motion to strike off may be treated as a demurrer. See Gulian v. Gulian, 7 D.&C.2d 247 (1954); compare Jacobs v. Brooks (No. 2), 30 Somerset 130 (1973).

(2) The objections fail to comply with Pa. R.C.P. 1028(a) which requires that preliminary objections specifically state the grounds relied on. It is not sufficient to state merely that a pleading states no cause of action, leaving everyone uncertain until argument as to the specific complaint; the particular deficiency complained of must be properly pleaded: Zimmerman v. Glessner, 32 Somerset 74, 80 (1976); Spickler v. Lombardo, supra, 18 (1976); Pittman v. Trent, 30 Somerset 283, 288 (1975); 2 Goodrich-Amram 2d §1028(a):1.

Since defendants filed no preliminary objections to the preliminary objections asserting these formal defects, defendants have waived them: Pittsburgh National Bank v. Garrity, 31 Somerset 333 (1976). Nevertheless, the court may on its own motion decline to consider such formally defective objections: Pittsburgh National Bank v. Garrity, supra. In this case we see no reason to initiate such a motion; there seems to be some misunderstanding about the nature of the cause of action

which defendants assert in their complaint, and the course of the litigation will not be served by allowing that to continue. Now is the time to settle the nature of the cause in the interest of serving the needs of the case and judicial economy. See Jacobs v. Brooks (No. 2), supra. Although counsel have not briefed or argued the essential elements of the cause of action, we must of necessity do so now in order to determine whether defendants have pleaded a legal claim against additional defendants.[3]

The complaint apparently intends to plead a cause of action for conversion of personal property (consisting of a crane and two shovels); the complaint alleges that additional defendants "wrongfully, wilfully and fraudulently converted such equipment to their own use" (paragraph 14 of complaint). It further avers that additional defendants caused plaintiff's damages by "negligently, wrongfully and recklessly dispossessing plaintiff of such equipment and negligently, wrongfully and recklessly causing such equipment to be levied upon and sold at an execution sale and by wrongfully, negligently, carelessly and recklessly converting said equipment" (paragraph 5 of complaint); that additional defendants were the execution plaintiffs, that one Coleman (not a party to this action) was the execution defendant, and

---

3. The objections also say nothing of the complaint being scandalous and impertinent, although counsel for additional defendants argued that the averments of fraud should be stricken on that ground. Since the ground is not alleged, we will not consider it; it is not on the same plane of importance as the demurrer. See Eureka Stores v. Solomon, 33 Somerset 142 (1973), and cases therein cited, on scandalous and impertinent allegations.

that additional defendants purchased the equipment in suit at the execution sale; that additional defendants "knew or had reason to know that such equipment was not owned by said Paul Coleman, and yet said additional defendants nevertheless wilfully proceeded with their . . . levy and execution sale, even though they knew or had reason to know" that plaintiff was the true owner (paragraph 7 of complaint). It is also alleged as an alternative that additional defendants "failed to make inquiry or take other action to ascertain who the owner of such equipment was, and despite such lack of inquiry and knowledge, wilfully proceeded anyway with their . . . execution sale" (paragraph 8 of complaint). The complaint also alleges that additional defendants "falsely, fraudently and wilfully proceeded . . . with execution sale, and proceeded to purchase the equipment at such execution sale, even though said additional defendants knew that the equipment . . . was not owned by . . . Coleman." (paragraph 12 of complaint), and that they "with intent to deceive and defraud plaintiff " wilfully proceeded with the execution (paragraph 13 of complaint).

These averments intermix allegations of wilfullness, negligence and recklessness, and fraud, in a single count, which are broad enough to cover several torts: (1) trespass to chattels, (2) conversion of chattels, and (3) negligent dispossession of chattels. The original distinctions between "trespass to chattels" and "conversion" arose from the common law forms of action of trespass and trover for conversion. The distinction in those forms of action has been abolished, and the claims are now implemented in the single all-embracing action in trespass, but we have not as yet been completely

liberated from the substantive distinctions. See 37 P.L.E. 425 §81. We use the phrase "trespass to chattels" to designate not the form of action but the substance of the cause of action as distinguished from "conversion" and its substance. The history of these distinctions is well laid out in Prosser, Law Of Torts (4th Ed. 1971), 76, 79 §§14 and 15, and Restatement 2d Torts §216 et seq. (hereinafter called Restatement, for which Dean Prosser was the reporter). A review of the history reveals that today torts of "trespass to chattels" and of "conversion" are so similar, and their distinctions so slight, that separation is hardly justified. See Remington v. Landolt, 541 P.2d 472 (Ore. 1975), concurring opinion. Nevertheless, at this point in legal development, the synthesis has not yet been accomplished, and we must cope with drawing fine distinctions.

A conversion may be defined as an intentional exercise of dominion or control over a chattel, which seriously deprives or interferes with the lawful right of another person to possess or control it, without the consent of the other or privilege or other lawful justification.[4] From this definition,

---

4. Prosser, supra, §15, p. 79, says: "Conversion is a fascinating tort, although it has largely eluded the attention of legal writers. Highly technical in its rules and complications, perhaps more so than any other except defamation, it almost defies definition. The chief reason is that the hand of history, with its old common law forms of action, lies heavy upon this particular field."

The Pennsylvania Supreme Court has adopted several definitions of conversion: A conversion is "an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession." Norriton v. Central-Penn Nat. Bank, 435 Pa. 57, 60, 254 A.2d 637 (1969). "Conversion is an act of interference

we can list the essential elements of a chattel conversion, and analyze them as follows:

(1) The Claimant: The claimant must have possessory rights to the chattel. He must be the possessor, or have the right of immediate or future possession. See Restatement §§224A, 225 and 243; Newell v. Brooks, 29 Somerset 355 (1972).

(2) The Claim: The only claim or remedy for conversion is a judgment for money damages for the full value of the chattel, whether or not the chattel has been completely destroyed or lost; the claim is not merely for the amount of damage or harm. In conversion (unlike in trespass to chattels and other chattel torts), the claimant need not accept return of the converted chattel and instead is entitled to its full value; when the actor pays that value, title passes to him. In effect, in conversion there is a forced judicial purchase or sale because of the wrongful appropriation. See Restatement §222A, comment c; Prosser, supra, §15, p. 80. There is, therefore, in conversion a punitive element which may in some cases seem to go beyond mere compensatory damages, but which is not punitive damages; the actor receives the chattel.

(3) Wrongful Conduct: There must be an exercise of dominion or control over the chattel by the actor. Such exercise of dominion or control may take any of several forms. It may consist of (a) acquiring possession of the goods; (b) transferring the goods in a manner which deprives the owner of control; (c) withholding possession from one who has the right to it, and (d) damaging or misusing the chattel. See Norriton v. Central-Penn, supra; Martin v. National Surety, 437 Pa. 159, 165, 262 A.2d 672 (1970); Stevenson v. Economy Bank, supra. For another listing of the ways in which

such an exercise of dominion or control may occur, see Restatement §223.

(4) Effect Of Wrongful Conduct: The exercise of dominion or control must result in such an unreasonable or serious deprivation of or interference with the claimant's possessory right as will justify requiring the actor to pay the full value of the chattel. If the exercise of dominion is brief and harmless, there is no conversion and the severe remedy of forced sale will not be applied: Prosser, supra, §15 p. 85; Restatement §222A, comment c. As stated in Prosser, supra:

"If A takes B's hat from the rack in a restaurant, immediately discovers his mistake, and returns the hat, it is clearly no conversion. If he takes the hat intending to steal it, or if he keeps it six months, or if a sudden gust of wind blows it off of his head into an open manhole and it is lost, the interference with the rights of the owner becomes sufficiently serious to amount to conversion."

As later explained, where all elements of a conversion are present except such an unreasonable or serious invasion as justifies the claim for full value, the cause of action is not conversion but trespass to chattels.

---

with the dominion or control over a chattel." Stevenson v. Economy Bank of Ambridge, 413 Pa. 442, 451, 197 A.2d 721 (1964). " 'A conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification.' "

Restatement 2d Torts defines conversion in section 222A(1) as follows: "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."

(5) Intention: The exercise of dominion or control over the chattel must be intentional. There is no such thing as a reckless, negligent or accidental conversion. See Restatement §§223, comment b, and 224. Although there may be a negligent dispossession, that tort is governed by the principles of negligence and is neither conversion nor trespass: Restatement §222, comment b. In conversion, only the exercise of dominion need be intentional, not the resulting deprivation or interference with the other's rights. Therefore, bad faith or intent to interfere with another's rights or even knowledge that the actor's conduct will cause a deprivation or interference with the rights of another need not be shown. Consequently, fraud is not an essential element of conversion: Baker v. Rangos, 229 Pa. Skuperior Ct. 333, 348, 324 A.2d 498 (1974). "Therefore neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action." Poggi v. Scott, 167 Cal. 372, 139 P. 815, 816 (Cal. 1914). " 'The intent is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.' " Norriton v. Central-Penn, supra, 60. A fortiori, mistake is no defense. See Forsyth v. Wells, 41 Pa. 291 (1862); Restatement §244. As stated in Poggi v. Scott, supra, 816:

" '. . . Here, then, is a class of cases in which the tort consists in the breach of what may be called an absolute duty; the act itself . . . is unlawful and redressable as a tort . . . Absence of bad faith can never excuse a trespass, though the existence of bad faith may sometimes aggravate it. Everyone

must be sure of his legal right when he invades the possession of another.' ".[5]

These authorities do not say that conscious wrongdoing is irrelevant in conversion, merely that it is not necessary. Proof by plaintiff of fraud or bad faith on the part of the converter will often strengthen his case and, as stated in Poggi v. Scott quoted supra, may aggravate it. But, under the principles above discussed, proof by defendant of good faith, mistake or honesty of intention will not defeat the cause of action. Such factors are, however, given relevance on the issue of the unreasonableness or seriousness of the deprivation or interference with the claimant's rights under the formulation of the law of conversion in the Restatement as quoted in footnote [4], supra. In Restatement §222A (2) (b) and (c), it is stated that: "(2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:

"(a) . . .

"(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;

"(c) the actor's good faith; . . ."
See also Restatement §244, comment b.

The comments to §222A, and the text of Prosser,

---

5. There is a special exception to these principles for a bailee or servant, as stated in §230 of the Restatement: "A bailee, agent, or servant who receives the possession of a chattel for storage, safekeeping, or transportation on behalf of his bailor, principal, or master, is subject to liability for conversion if, but only if, he does so with knowledge or reason to know that a third person has the right to immediate possession of the chattel." See also §§231, 233, 234 and 235. In this case the pleadings contain no indication that this rule is applicable here.

supra, who was the Reporter and guiding hand for Restatement 2d Torts, do not fully clarify the relationship between the rule that good faith and intention are no defense to an action in conversion and the idea that those may be factors in determining seriousness of the deprivation or invasion. Some courts which have generally adopted 222A(1) have avoided adopting the intent and good faith provisions of Restatement §222A(2) (b) and (c), supra. See Remington v. Landolt, supra, 479. The Supreme Court has cited §222A in Martin v. National Surety, supra, 165, and in A & J Solomon Wrecking Co. v. Raymond Colliery Co., Inc., 437 Pa. 342, 347, 263A.2d 743 (1970), without expressly adopting the section and without indicating the extent of its approval; that court has also adopted a large part of Prosser's analysis, but without touching upon §222A(2): Martin v. National Surety, supra, 165; Norriton v. Central-Penn, supra, 60; Stevenson v. Economy Bank, supra, 451-2. As we construe Restatement §222A(2), it becomes operative only in cases where the unreasonableness or seriousness of the deprivation or interference is not clear and is therefore a material issue in the case, as where the interference is harmless and of brief duration. As stated in Prosser, supra, section 15, page 85:

"It is not, however, every unauthorized taking of goods from the possession of another which is sufficiently serious to amount to conversion. Intention may be good, the duration brief, the event harmless; and if so, the severe remedy of the forced sale to the defendant will not be applied."

In such debatable cases, the factors of Restatement §222A(2) may be relevant, but if the seriousness or unreasonableness of the deprivation or in-

terference is clear, §222A(2) cannot operate to create a defense on the basis of the factors there listed, otherwise the whole concept of the conversion cause of action would require revision. That such revision is not intended by the Pennsylvania Supreme Court seems clear from its decisions cited and quoted in this opinion.[6]

The tort of trespass to chattels differs only slightly from conversion; its elements may be catalogued as follows:

(1) The Claimant: Same as conversion.

(2) The Claim: The claim or remedy is not necessarily for the full value of the chattel, as in conversion; instead, it is for the actual loss or harm caused, which may or may not be the full value. See Restatement §222A, comment c. If there is a dispossession, some courts award nominal damages. See Prosser, supra, §14, p. 77; Restatement §222, comment a. As stated in Prosser, supra, §14, p. 76:

"Its [trespass to chattels] chief importance now is that there may be recovery where trespass would lie at common law, for interferences with the possession of chattels which are not sufficiently important to be classed as conversion, and so to compel the defendant to pay the full value of the thing with which he has interfered. Trespass

---

6. Factors of fraud and intentional wrongdoing may provide the basis for a claim for exemplary damages, if outrageous conduct is pleaded and proved. See W. W. Coal v. Pennsylvania National Mut., 30 Somerset 69, 75 D.&C.2d 621 (1975); Spickler v. Lombardo (No. 1), supra, 33; see also Spickler v. Lombardo (No. 2), 33 Somerset 340 (1977). On pleading punitive damages, see Joseph v. Naylor, 257 Pa. 560, 101 Atl. 829 (1917); W. W. Coal v. Pennsylvania National, supra; 11 P.L.E. 226, §141; 25 C.J.S. Damages 1191, §133.

to chattels survives today, in other words, largely as a little brother of conversion."

(3) Wrongful Conduct: The liability-creating conduct may, as in conversion, be an exercise of dominion or control, but trespass may embrace other types of interferences. See Fouldes v. Willoughby, 151 English Reports 1153 (1841) as discussed in Prosser §15, p. 80. The Restatement describes the conduct toward the chattel which may constitute a trespass as consisting of a dispossession, use, or "intermeddling" with a chattel in the possession of another. See Restatement §217 and comment e. We need not attempt to define intermeddling; it is sufficient for our purposes to know that the scope of wrongful conduct in trespass includes but may be broader than that required for conversion, although the scope of conversion has become so broad that there is little left for trespass to embrace. Compare Restatement §223 (conversion) with §217 thereof (trespass). There is a great deal of overlapping of the liability-creating conduct of the two torts, and careful research might show that this distinction between trespass and conversion is largely passé. We need delve no further into this problem here, because, as we shall see this complaint alleges an exercise of dominion sufficient to support conversion or trespass.

(4) Effect Of Wrongful Conduct: The actor's conduct must consist of some dispossession, use or other intermeddling with the claimant's possessory rights, but it need not be so unreasonable or serious as to warrant payment of the chattel's full value. As stated above, the remedy in trespass is compensation for harm (which may be the full or partial value), or perhaps nominal damages for a

dispossession, and in trespass the claimant remains the owner of the chattel.

(5) Intention: The interference or intermeddling with the chattel must be intentional, and the intention required is the same as that above outlined for conversion. See Restatement §217, comments b and c, §221, comment b, and §222, comments b and c. It should be noted, however, that in trespass we do not have quite the same problem as in conversion to determine whether the deprivaton or interference is serious enough to warrant payment of full value in the determination of which intent and good faith are material if the degree of deprivation or interference is debatable, as above discussed. But compare Restatement §222, comment a. No such problem exists in this case.

As to the third tort under consideration, negligent disposesession, it rests on principles of ordinary negligence; such a cause of action requires a breach of duty by absence of reasonable care which causes harm. See Restatement §217, comment b and §222, comment b; see also Sturtz v. Yoder's Milk Transport, 30 Somrset 1, 8 (1975).[7]

Applying the principles of law to this complaint in order to determine whether it states a cause of action, we conclude that the complaint alleges a cause of action for trespass to chattels, or possibly for conversion:

(a) The complaint's averments that plaintiff was the true owner of the chattels, that he was deprived and dispossessed thereof sufficiently al-

---

7. It is also possible for an actionable dispossession to be based on principles of abnormally dangerous conduct. See Restatement §222, comment b.

leged a right of immediate possession in the claimant. See paragraphs 4, 5 and 7 of complaint.

(b) An execution creditor who intentionally causes a chattel of a third person to be levied upon and sold as the property of his debtor dispossesses the rightful possessor in violation of his rights. Such a dispossession is an exercise of dominion or control and may be a conversion. See Croft v. Jennings, 173 Pa. 216, 33 Atl. 1026 (1896); Coles v. Sutphen, 167 Pa. Superior Ct. 457, 460, 75 A.2d 623 (1950); Beadling v. Moore, 93 Pa. Superior Ct. 544 (1928); Bernstein v. Hineman, 86 Pa. Superior Ct. 198, 201 (1925); Restatement §223(a). It may also constitute a trespass to chattels: Restatement §221(e), comment g.

(c) Such an execution sale of plaintiff's property as pleaded is a deprivation or interference with plaintiff's possessory rights which is so unreasonable and serious as to warrant requiring additional defendants to pay the full value of the chattel. The execution sale of plaintiff's property, especially to additional defendants, makes the deprivation complete. Accordingly, there is no need for pleading fraud, bad faith or wrongful intent to make out the cause of action; such averments are relevant and permissible, but unnecessary.

(d) The averment that the exposure to execution sale was wilful is the equivalent of an averment that the exercise of dominion or control was intentional. See Commonwealth v. Gallagher, 165 Pa. Superior Ct. 553, 69A.2d 432 (1949).

(e) The foregoing averments are sufficient to support a cause of action for trespass to chattels, or possibly for conversion. The latter would be the proper action for a claim for full value of the chat-

tels, the former the proper action for a claim for harm or loss. Here it is not entirely clear that the claim is for full value. Defendants' complaint contains no customary claim for relief for a specified sum of money; instead its claim is derivative from that of plaintiff against defendants alleging that additional defendants are solely or jointly and severally liable to plaintiff for his claim. Plaintiff sues to recover purchase money paid for the chattels; the sum paid and claimed is the full contract price which is not expressly stated to be the full value of the property, although it is the measure of plaintiff's loss. It seems likely that the contract price is the equivalent of full value, but that may be an unwarranted assumption. Strictly speaking the action is for the claimant's loss as measured by the contract price rather than for the value of the chattel. The difficulty is that the pleading casts plaintiff rather than defendants (whose complaint is in issue) in the role of claimant. Had plaintiff sued additional defendants directly, the claim would clearly be for conversion rather than trespass (if not replevin); so viewed the essence of the pleaded tort is conversion. But, the difference between trespass and conversion in such a case is insignificant and does not affect the validity of complaint in pleading an intentional tortious disposition or appropriation of personal property. We need not struggle to label it.

(f) The averments of fraud are based upon the alleged knowledge of additional defendants that the property did not belong to their debtor, but to plaintiff, and that defendants in obtaining their judgment against Coleman and proceeding to sale against the property in issue intended to deceive plaintiff and to defraud him of his property. This is a sufficient pleading of fraud. Although fraud

must be pleaded with particularity, intent and knowledge and other conditions of mind may be averred generally under the express provisions of Pa. R.C.P. 1019 (b). See also Eastern Motel Associates v. Pacific Employers Ins. Co., 30 Somerset 325 (1975), on pleading fraud.

(g) The averments characterize the dispossession of plaintiff as negligent and reckless, which cannot be either conversion or trespass. The complaint, however, lacks adequate specifications of negligence. Proper pleading of negligence requires specification of the breaches of duty where possible: 2 Goodrich-Amram 2d §1044(a)1.3; compare Sturtz v. Yoder's Milk Transport, 30 Somerset 1, 9 (1975); Whistler v. Rullo (No. 1), 33 Somerset 184 (1976), and Pittman v. Trent, 30 Somerset 283, 287 note [1] (1975). Apparently the averments of paragraph 8 of the complaint are intended as the specifications of negligence; those averments charge that additional defendants "failed to make inquiry or take other action in order to ascertain who the owner of such equipment was, and despite such lack of inquiry and knowledge, wilfully proceeded anyway." If these averments are intended as the specifications of negligence, they miss the point that the negligence must relate to the acts to the property which result in the dispossession, as well as to the consquences to the rights of the true owner, but not merely to those consequences. The quoted allegations state that the exposure of the property sale was "wilful," which states an intentional exercise of dominion and control resulting in a substantial deprivation or interference with the owner's rights in the property, which constitutes the intentional tort of trespass or conversion even though the actor may have been negligent (or entirely inno-

cent) concerning the effect of that action on the true owner, as previously explained. A dispossession refers to acts to the property (see Restatement §221). In short, in order to establish the tort of negligent dispossession, it is necessary, after establishing the range of duty, to show that the duty was breached by the want of due care in the acts of dispossession (exposing the property to public sale) and as well in the foreseeable consequences of harm therefrom. Such elements are not alleged here and we do not construe the complaint as intending to do so. Consequently we consider that the complaint pleads no negligent dispossession; if defendants wish to plead such a cause of action, they will have to amend and if that is done the claim should be set forth in a separate count under Pa. R.C.P. 1020(a).

## ORDER

Now, August 15, 1977, the preliminary objections of additional defendants to defendants' complaint are overruled, with 40 days to plead further. Defendants are allowed 20 days to amend the complaint to plead negligent dispossession of chattels if desired.