## Martin, Appellant, v. National Surety Corporation.

Argued April 25, 1969. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

re-
argument refused March 13, 1970.

*Melvin Lashner,* with him *Adelman & Lavine,* for appellant.

*Paul J. Donnelly,* for appellee.

*Edward A. Hosey,* Assistant Attorney General, with him *John R. Rezzolla,* Deputy Attorney General, and *William C. Sennett,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE COHEN, January 30, 1970:

Appellant is the trustee in bankruptcy for James J. O'Brien and Daniel L. Redmond, Jr., trading as O'Brien and Redmond, who, prior to their financial embarrassment, were primarily engaged in the construction of highways for the Commonwealth of Pennsylvania. During the period that bankrupts' financial difficulties were developing they had nine active contracts with the Commonwealth, the total value of which was $114,-616.65. National Surety Corporation, one of the appellees here, was surety on six of the contracts. When bankrupts became unable to fulfill their contractual obligations the sureties were required to step into the breach and complete the contracts. Construction was completed and most laborers, materialmen and subcontractors were paid; some claims, however, remained outstanding.

162

Some time after the contracts were completed the Commonwealth paid the entire $114,616.65 due on the nine jobs to National. National in return signed and gave to the Commonwealth an indemnification bond holding the Commonwealth harmless from any claims that might be made against it for releasing that sum to National.

Appellant first brought suit against National in the United States District Court for the Eastern District of Pennsylvania, alleging jurisdiction under Section 23 of the Bankruptcy Act, 11 U.S.C. §46. That court decided that it did not have jurisdiction and dismissed the complaint. Appellant then filed this action in assumpsit against National and the Commonwealth. Preliminary objections were filed by both defendants; the Commonwealth claimed that the Common Pleas Court of Philadelphia County lacked jurisdiction, and National claimed that the complaint failed to state a cause of action. Both preliminary objections were sustained and this appeal followed.

The lower court correctly concluded that it was without jurisdiction over the Commonwealth. It also properly concluded that appellant was not a third party beneficiary of the indemnity agreement between National and the Commonwealth. The unavailability of that theory, however, does not preclude the existence of other theories upon which appellant may proceed.

A trustee in bankruptcy takes title to the property of the bankrupt under §70a of the Bankruptcy Act, 11 U.S.C. §110a. Relevant to this case is §70a(6) which vests in the trustee, as of the date of the filing of the petition, title to "rights of action arising upon contracts . . . or the unlawful taking or detention of . . . his property." Because this appeal is from the granting of appellee's preliminary objections, the court must accept as true all allegations of fact in appellant's complaint, plus all reasonable inferences therefrom. In

paragraph 8, appellant alleges that at the time of the filing of the petition there were funds due and owing by the Commonwealth for work performed on the nine projects. Appellant also alleges that these funds are now in the hands of appellee. Thus, as of the day the petition was filed, we must assume the trustee acquired title to a valid contract right of action and a fund of money that that action represented.

Absent the sovereign immunity doctrine, appellant could proceed against the Commonwealth on the right of action which arose out of a contract. That is impossible, and as a practical matter, appellant will not be able to take his claim to the Board of Arbitration of Claims because the short six months statute of limitations has expired. Therefore, if he is to have any remedy at all, it must be against this appellee. The bankrupts apparently did not have a right of action against National Surety arising upon a contract, and so the trustee can proceed only if the appellee has unlawfully appropriated the bankrupts' property. Since we must assume the Commonwealth actually owed this money, the trustee can trace that property to its present possessor if the appellee has unlawfully taken or detained it.

The leading case in this area is *Pearlman v. Reliance Insurance Company*, 371 U.S. 132 (1962), which involved a dispute between a trustee in bankruptcy and a surety over $87,000 in a federal government withheld fund. The bankrupt had not carried out its obligation to pay laborers and materialmen, and the surety had to pay debts totalling $350,000. The trustee asserted title to the money under §70 and claimed the surety had only the status of a general creditor. The surety claimed the entire amount free and clear of any claims by the trustee. The Supreme Court held that the bankrupt did not have title to the property the day the petition was filed and so the trustee never gained title

to it. This was because the surety having paid the laborers and materialmen acquired an equitable lien on the fund, a lien which gave it priority over the trustee. The Court said at page 136: "[O]ur question is not who was entitled to priority in distributions under §64, but whether the surety had, as it claimed, ownership of, an equitable lien on, or a prior right to this fund before bankruptcy adjudication." It does not matter that the government in the *Pearlman* case was holding a small percentage of the total contract amount while in this case the total amount due seems to have been retained. Thus, on the surface it would appear that the appellee had a right to this money as the appellant admits that it paid certain subcontractors, laborers and materialmen.

The situation is much more complicated. First, on three of the nine contracts National was not the surety. Hence, it is difficult to see how it could establish a prior right to the funds represented by those contracts. Even if it had actually paid claims owing under those contracts, it would have been a volunteer and not entitled to the equity of subrogation. "Those who are in the situation of a surety, in the sense that they pay the debt of another, but who are under no obligation to pay such debt, and who do not, by paying, preserve and protect some interest in their own property, are mere volunteers and not within the equity of subrogation." Feinsinger, Stearns Law of Suretyship, §259 at 467 (1934). Appellee has given no indication (1) that it made any payment on these three contracts or (2) if it had, how the payment was to preserve or protect some property interest of its own. Thus, it seems clear that as to the proceeds of these three contracts appellee has no prior claim under the *Pearlman* doctrine. Therefore, retention of this money (approximately $52,000) is a conversion of appellant's property.

Prosser defines conversion as follows: "(a) Acquiring possession of the goods, with an intent to assert a right to them which is in fact adverse to that of the owner. (c) Unreasonably withholding possession from one who has the right to it." Prosser, Torts §15 (2d ed. 1955). Since it has been shown that the appellee has no prior right to this money, and since it must be assumed that the money was owed to appellant, the elements of a cause of action for conversion have been met. See also, Restatement (Second), Torts §222A (1965).

Appellee was the surety on the other six contracts, and thus the *Pearlman* doctrine could possibly apply. One central element is missing, however. Appellant alleges (and we must assume) that not all claims for taxes and not all claims of subcontractors, laborers and materialmen have been paid to date. The law is clear that "the claim of the creditor must be fully satisfied before there can arise any equity of subrogation." Feinsinger, supra §245 at 430; 17 Am. Jur. 2d, Contractors' Bonds, §107 (1964); Williston, Contracts, 3d ed. §1269 (1967); Restatement, Security, §141 (1941). The Supreme Court, in *Pearlman,* specifically refers to the fact that the surety had paid the laborers and materialmen. 371 U.S. at 141. Even though the surety has an inchoate right (to the equity of subrogation) as soon as the contract of suretyship is signed, the right is not capable of present enforcement until the surety has fulfilled his obligation by paying in full all debts of the principal. 17 Am. Jur. 2d, Contractors' Bonds, §107 at 284. Consequently, in this action the appellee is not able to use the *Pearlman* doctrine to assert a prior right to this fund, and the trustee can trace the fund to and recover it from appellee because the retention of it is, likewise, a wrongful conversion of appellant's property.

As to the proceeds of all nine contracts, the bankrupts had a "property" right as of the day the petition was filed; this was a right to specific monies being held by the Commonwealth (absent sovereign immunity) as a §70(a)(6) contract claim and against appellee because the inapplicability of the *Pearlman* doctrine makes its retention of the money a wrongful conversion.

We should not be quick to dismiss appellant's complaint in this complicated action, especially when National Surety clearly has possession of at least some money to which it is not entitled. Therefore, appellant should be permitted to amend its complaint to state a cause of action for conversion, or to state with greater particularity a cause of action for assumpsit, *Humbird v. Davis*, 210 Pa. 311, 59 Atl. 1082 (1904), or state an equity cause on a trustee *ex maleficio* theory.

The order of the court below is reversed.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I am of the opinion that the preliminary objections were properly sustained and would affirm the judgment of the trial court.

First, with regard to the Commonwealth, it is indisputable that as a sovereign state it is immune from suit except insofar as it waives its immunity.[1] The Constitution of Pennsylvania, Article I, Section 11, provides that: "Suit may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." The scope of the immunity, then, turns on what the Legislature has done with its power. I have discovered only two legislative pronouncements relevant to the waiver of sov-

---

[1] *Box Office Pictures, Inc. v. Board of Finance and Revenue*, 402 Pa. 511, 166 A. 2d 656 (1961); *Kaufman Construction Co. v. Holcomb*, 357 Pa. 514, 55 A. 2d 534 (1947).

ereign immunity in cases such as the one confronting us now.

The Act of May 26, 1931, P. L. 191, §2, 12 P.S. §105, states that: "All actions at law or in equity by which it shall be sought to compel a State officer to perform or restrain him from performing any official act in the execution of the laws of the Commonwealth shall be instituted in the court of common pleas of Dauphin County." Only two observations need be made with respect to this statute. First, it is not at all clear that the instant case is of the type covered; and, secondly, even if this suit is within the ambit of the statute it is clear that it was brought in the wrong court.

The second piece of legislation which has bearing on our problem is the Act of May 20, 1937, P. L. 728, as amended, 72 P.S. §4651.1, which provides that: "There is hereby created a departmental administrative board in the Department of the Auditor General, known as the Board of Arbitration of Claims, the duty of which shall be to arbitrate claims against the Commonwealth arising from contracts entered into by the Commonwealth . . . ."

This statute, if it does anything, supports the lower court's determination that it lacked jurisdiction. The Commonwealth, by creating the Board of Arbitration, has provided a forum wherein claims arising out of contracts with the state can be pursued against the state.[2] It is probable that the board was intended to be the exclusive forum for the prosecution of such claims.[3] Were this not so it would have been senseless

---

[2] *Foley Bros., Inc. v. Commonwealth*, 400 Pa. 584, 163 A. 2d 80 (1960); *Road Machinery, Inc. v. Commonwealth*, 88 Dauph. 1 (1967).

[3] Cf. *Kaufman Construction Co. v. Holcomb*, 357 Pa. 514, 55 A. 2d 534 (1947); *Balazick v. Harral*, 88 Dauph. 113 (1967); *Pentz v. Commonwealth*, 110 F. Supp. 809 (E.D. Pa. 1953); 11 Std. Pa. Prac. 432-33 (1964).

168

for the Legislature to have included a six month statute of limitations.[4]

For the foregoing reasons, and because I can find no other legislative pronouncement authorizing this type of suit in the forum in which it was brought, I am forced to conclude that the court below properly decided that it was without jurisdiction over the Commonwealth.

Coming to the question of the sufficiency of appellant's complaint insofar as National is concerned, I am of the opinion that it fails to state a cause of action against National.

Appellant's fundamental contention is that he, standing in the shoes of the bankrupts,[5] is a third party beneficiary of the indemnity agreement between National and the Commonwealth. The only reference to the indemnification agreement in the complaint is in paragraph 10 thereof: "10. In order to induce the Commonwealth of Pennsylvania to turn over those funds the defendant National Surety Company signed an indemnification bond holding the Commonwealth of Pennsylvania harmless from any and all claims against the said Commonwealth for releasing said funds to defendant National Surety Company."

Appellant alleges no more than a simple indemnity agreement[6] and a simple indemnity agreement does not

[4] Act of May 20, 1937, P. L. 728, as amended, 72 P.S. §4651.6.

[5] *Martin, trustee of O'Brien and Redmond v. National Surety Co. and Commonwealth of Pennsylvania*, Court of Common Pleas of Philadelphia County, April Term 1968, No. 216.

[6] Appellant prepared and filed his complaint without the benefit of seeing a copy of the actual agreement between National and the Commonwealth. He did so even though he could have obtained a copy of the document through discovery. "A plaintiff may commence an action of assumpsit by writ and then obtain discovery to enable him to prepare his complaint in view of the fact that a petition for discovery may be filed at any time." 5 Anderson Pa. Civ. Prac. 59 (1966); *Philber Lehigh Co. v. Canada Dry Bottling*

create any rights of action in third persons.[7]

Turning to the majority opinion, I have two observations: I feel that this Court should not go quite so far out of its way to construct a theory of recovery for a plaintiff who has so clearly failed here and on at least one other occasion to construct one for himself;[8] and I do not believe that the majority's suggested theory is tenable.

As nearly as I can understand the majority's theory, it depends upon a finding that the debt allegedly due from the Commonwealth gave the bankrupts, and therefore the trustee in bankruptcy, a property right in the fund which the Commonwealth had set aside to cover the cost of the project. The complaint contains no assertion of any such property right, and I cannot see how any could have been alleged.[9] The fund held

Co., 17 Pa. D. & C. 2d 356 (1958) ; Berg v. Levenberg (No. 1), 17 Pa. D. & C. 2d 29 (1958) ; Purcell v. Westinghouse Broadcasting Co., 10 Pa. D. & C. 2d 729 (1957) ; Geer v. Martsolf, 7 Pa. D. & C. 2d 696 (1956) ; McKeon v. Independence Broadcasting Co., 87 Pa. D. & C. 421 (1954).

[7] Coleman v. Bradford, 415 Pa. 557, 204 A. 2d 260 (1964) ; Silverman v. Food Fair Stores, 407 Pa. 507, 180 A. 2d 894 (1962) ; Burke v. North Huntingdon Township, 390 Pa. 588, 136 A. 2d 310 (1957) ; 2 Williston on Contracts (3d Ed.), §403, p. 1091 (1959).

It is important to note that we are not here dealing with insurance contracts, see Graham v. U. S. Fidelity & Guaranty Co., 308 Pa. 534, 162 Atl. 902 (1932) ; Rose & Son, Inc. v. Zurich General Accident & Liability Co., 296 Pa. 206, 145 Atl. 813 (1929) ; or surety contracts, see Pennsylvania Supply Co. v. National Casualty Co., 152 Pa. Superior Ct. 217 (1943) ; or contacts which go beyond ordinary terms of indemnity, see Bell Telephone Co. v. Livengood, 33 North. 233 (1951).

[8] See Martin v. National Surety Corporation, Civil No. 43638 (E.D. Pa. March 12, 1968).

[9] The case of Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S. Ct. 232 (1962), is inapposite and unhelpful. In Pearlman a builder defaulted on a contract with the federal government and went into bankruptcy. The builder's Miller Act surety paid the materialmen, and the question was whether the surety or the

by the Commonwealth was in no accepted sense of the word the "property" of the bankrupt.[10] At the time the money was transferred to National the *most* that the bankrupt had was a chose in action against the Commonwealth,[11] and I cannot believe that the transfer worked to give the bankrupt an interest greater than that which he had before it was made.

Since I would affirm the judgment of the trial court sustaining the preliminary objections of the appellees, I must register my dissent.

Mr. Justice EAGEN joins in this dissent.

---

trustee in bankruptcy had a better claim to a small fund, ten percent of the contract price, that the government had retained to insure completion. The Supreme Court held that the surety, by having paid the materialmen, was subrogated to the *government's* equitable property right in the fund, and that it therefore took it in preference to the trustee. Our case involves neither the federal government, the Miller Act, a small retained fund or the question of subrogation, and I submit that *Pearlman* is therefore irrelevant.

[10] When the federal courts were confronted with this very case they reached a similar conclusion. After reciting those sections of the Bankruptcy Act which vest title to all rights of action and property possessed by the bankrupt in the trustee, the court said: "From the language above quoted, it appears evident even were the sum paid by the Commonwealth to defendant to be considered proceeds of the contractual debt between the Commonwealth and bankrupts, that, prior to filing, they could by no means have judicially proceeded against the money. It was, furthermore, 'property' of bankrupts in no accepted sense of the term. . . . No theory has been shown by plaintiff by which he has the right to maintain an action for the possession of this money unler the Bankruptcy Act; and we have been able to conceive of none." *Martin v. National Surety Corporation*, Civil No. 43638 (E.D. Pa. March 12, 1968).

[11] One of the reasons that the trustee is anxious to press this suit against National is that his cause of action against the Commonwealth is probably barred by the six month statute of limitations in the Act of May 20, 1937, P. L. 728, as amended, 72 P.S. §4651.1 et seq.