J-S41016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LAVERY LAW, P.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL F. FAHERTY | : | |
| | : | |
| Appellant | : | No. 884 MDA 2022 |

Appeal from the Order Entered May 25, 2022
In the Court of Common Pleas of Dauphin County
Civil Division at 2017-CV-01435-CV

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                **FILED FEBRUARY 13, 2023**

Michael F. Flaherty (Appellant) appeals from the order sustaining the preliminary objections filed by plaintiff and counterclaim defendant, Lavery Law, P.C. (the Law Firm).[1]  We affirm in part and reverse and remand in part.

This is a dispute between the Law Firm and Appellant, a former shareholder and attorney with the firm.  In 2000, Frank Lavery, Jr. (Lavery or Attorney Lavery), formed the predecessor to the Law Firm when he offered Appellant and two other attorneys shares in his legal practice.  At that time,

_____

* Former Justice specially assigned to the Superior Court.

[1] The trial court's order indicated that immediate appeal would facilitate resolution of the entire case.  Trial Court Order, 5/25/22; **see** Pa.R.A.P. 341(c).  The trial court further explained that because of the significant relationship between the adjudicated and unadjudicated claims, immediate appeal would enhance the prospects of settlement.  Trial Court Order, 5/25/22.

Appellant, Lavery, and the other two attorneys entered into a Restricted Stock Agreement. In addition, Appellant executed a separate Executive Attorney Employment Agreement (Employment Agreement) with Lavery and the Law Firm. After a fifth partner was added in December 2012, the shareholders executed a new Restricted Stock Agreement.

Relevantly, Appellant's Employment Agreement provided:

4. COMPENSATION

(b) INCENTIVE BONUS. To provide annual incentive to the Attorney and to reward his and the Corporation's performance, the Board of Directors of the Corporation shall provide from time to time for payment of bonuses to the Attorney (the "Incentive Compensation Bonus") based upon the Attorney's and the Corporation's ability to meet the agreed upon objectives set forth on Exhibit "A" attached hereto and made a part hereof. **The amount of the Incentive Compensation Bonus and the Attorney's and Corporation's ability to meet the agreed upon objectives shall be determined by the Corporation's Board of Directors and/or its President and/or its Managing Shareholder in its, his or their sole discretion[.]**

Complaint, Exhibit G (emphasis added). The "List of Corporate and Individual Attorney Goals for Bonus," prescribed only "Billable hours of 1,500 each year."

*Id.*

In 2014, the Law Firm had no board of directors. Lavery served as the Law Firm's president and managing shareholder. The trial court explained:

[Appellant] alleges that upon becoming a shareholder in 2000, bonus amounts were determined by a Compensation Committee comprised of Attorneys Lavery and [Appellant], followed by full agreement and formal ratification by Attorney Lavery as Managing Shareholder. [Appellant] claims that between 2001 to 2013, the bonus was paid via application of a Performance Appraisal System, with certain adjustments providing extra points

for high performance, which always resulted in a consensus of Lavery and [Appellant] on bonus payments and then ratification by Lavery as Managing Shareholder.

In 2014, [Appellant] claimed to have achieved an extremely high performance rating (98 out of 100) based upon generating $2,618,481 of income to the law firm, a figure far exceeding any prior amount generated by any attorney in the firm's history. [Appellant] asserted that the entire fund available as bonus compensation for 2014 was $2,108,063. [Appellant] alleges that had the Law Firm applied the same parameters under the Performance Appraisal System as it had done in the past, he would have been entitled to the entire bonus distribution.

At a November 20, 2014 shareholder meeting, the shareholders approved of Lavery's motion to have the Compensation Committee present annual bonus amounts to the shareholders before the individual bonuses were determined. [Appellant] confronted Lavery the next day, concerned he was advocating for a "cash grab" of the bonus money by other shareholders, contrary to the firm's past practice. Lavery told him he planned to allow a shareholders' vote on bonus distribution and [Appellant] responded that such a redistribution vote would compel him to leave the firm.

[Appellant] claims he had a number of meetings with Lavery thereafter, between November 21 and December 25, 2014, to discuss bonus distribution. … [I]n the final days of 2014, Compensation Committee members Lavery and [Appellant] failed to agree on a bonus distribution ….

On December 30, 2014, Lavery called a meeting of all shareholders. [Appellant] claims that just prior to that meeting, Lavery met privately with the other three shareholders to discuss distribution of 2014 bonuses via shareholder vote, rather than by the process utilized in each of the prior thirteen years. At the shareholder meeting, by a four to one vote (with [Appellant] dissenting), a distribution of the $2,108,063 bonus fund was approved wherein [Appellant] was awarded $1,341,993, Lavery was awarded $354,365, and the remainder was divided amongst the other shareholders. [Appellant] notes that Lavery's bonus significantly increased over his 2013 figure despite his performance rating declining significantly between 2013 and 2014. [Appellant] additionally noted that the bonuses paid to

Lavery and two other shareholders were the highest ever paid to those attorneys[,] while their performance scores were their lowest recorded. [Appellant] claimed the bonus awards were in conflict with the established bonus system of rewarding strong performance and not rewarding poor performance. He further alleges that the approval of the distributions, via a shareholder vote on December 30, 2014, rather than by the Compensation Committee, was an unauthorized change to the bonus system. This alleged unauthorized change to the bonus distribution practice reduced [Appellant's] bonus from $2,108,063 to $1,341,993, a loss to [Appellant] of $766,070, which he claims [the Law Firm] owes him.

Trial Court Opinion, 8/8/22, at 4-5. Appellant subsequently left the Law Firm.

Following Appellant's departure, Appellant demanded his unpaid salary and reimbursement of a $3,000 business expense (Appellant's annual dues to an eminent domain professional organization). *Id.* at 5. Appellant further disputed the value assigned to his shares of the Law Firm and deductions charged for Appellant's failure to provide one year's notice of his departure, as required under the parties' Restricted Stock Agreement. *Id.* at 2.

The trial court described what next transpired:

Following [Appellant's] departure, [the Law Firm] sent a letter to [Appellant], on May 6, 2015, alleging that [Appellant] had unilaterally and improperly sent email notifications to firm clients, which [the Law Firm] had never seen nor approved, suggesting to clients that they select [Appellant] to retain their files and that this was a breach of the withdrawal provisions of the Restricted Stock Agreement. [The Law Firm] also informed [Appellant] that it considered him in breach of his obligations under the Employment Agreement for failing to devote all of his efforts "to the practice of law and business of the Corporation" wherein he abruptly left the [Law Firm] without appropriate notice and commenced his own legal practice.

[The Law Firm] informed [Appellant] in the letter that under the Employment Agreement, [Appellant] was obligated to

- 4 -

reimburse the firm for the value of all work [Appellant] performed, whether unbilled or billed and unpaid, on each eminent domain case he took with him, up to the date the file was removed from the firm. [The Law Firm] also demanded that [Appellant] conduct a prompt accounting on each contingent file, prorate each recovery and promptly pay the Law Firm its pre-withdrawal share. [The Law Firm] included in the letter a lengthy list identifying ninety-one (91) files taken by [Appellant] upon which it sought reimbursement of attorney's fees. [The Law Firm] also demanded that [Appellant] reimbursee it for costs advanced on all relevant files, as reflected on the list.

[The Law Firm] alleges that [Appellant] failed to reimburse it as required under the Employment Agreement and as demanded in its letter, prompting it to file its Complaint. In Count I of the Complaint, [the Law Firm] asserts that [Appellant] breached numerous sections of the Employment Agreement including soliciting and diverting firm clients away from [the Law Firm], by failing to cooperate with the Law Firm in the completion of his pending work and the orderly transfer of work to other Law Firm employees, and most significantly, by failing to compensate the Corporation for all outstanding disbursements for all work performed on legal matters transferred to [Appellant], pursuant to Section 13 of the Employment Agreement. [The Law Firm] asserts that the minimum damages it has incurred due to [Appellant's] breach of Section 13 is $730,691.16, which includes $20,791.16 for costs, $668,000.00 for attorney's fees, and $41,900.00 for paralegal fees. After the offset of $23,106.22 allegedly due [Appellant] for his Law Firm shares, [Law Firm] seeks minimum damages under Count I of $707,584.94. In Count II, [the Law Firm] asserts a claim for Quantum Meruit/Unjust Enrichment in the amount of $730,691.16, plus costs of suit.

Trial Court Opinion, 8/8/22, at 2-3.

Appellant filed an answer, new matter and counterclaims. In his new matter, Appellant described the Law Firm's past practice of determining bonuses. Appellant asserted counterclaims for: (I) Breach of Contract - Employment Agreement, (II) Breach of Contract - Restricted Stock

Agreement, (III) Conversion, and (IV) Intentional Interference with Contractual Relations.

> Under Counterclaim Count I, [Appellant's] primary assertion is that [the Law Firm] breached the Employment Agreement by failing to pay the bonus amounts in accordance with the Employment Agreement and past practices. Specifically, [Appellant] alleges that Lavery, whom [Appellant] agrees was solely delegated with the responsibility to determine bonus payments under Employment Agreement Section 4(b), wrongfully delegated the bonus determination to a shareholder vote. [Appellant] claims a loss $766,070 for bonus payments wrongfully withheld.

> [Appellant] also alleges under Count I that he was caused unspecified damages when [the Law Firm] delayed him payment of his salary due January 25, 2015, until March 10, 2015, in violation of the Employment Agreement's requirement for payment of services. Finally, [Appellant] alleges under Count I that [the Law Firm] should have paid his $3,000 membership fee to a professional organization under Employment Agreement Section 5(c), which requires the Law Firm to reimburse him for "reasonable business expenses incurred." [Appellant] claims that his new law firm was later forced to pay the fee after he left [the Law Firm].

> Under Counterclaim Count II, [Appellant] alleges that the Law Firm is in breach of the terms the Restricted Stock Agreement whereby it failed, as required under Sections 3 and 4, to fulfill its obligation to pay for [Appellant's] 30.97% ownership interest in [the Law Firm] under the time limits set forth thereunder….

> In Counterclaim Count III, [Appellant] asserts a claim for conversion. [Appellant] primarily claims that he was entitled to receive the entire 2014 bonus monies of $2,108,063 under the terms of the Employment Agreement and the established Performance Appraisal System. He claims that the Law Firm's failure to follow its past practice, and instead rely upon the unauthorized use of shareholder vote to distribute the bonus, resulted in conversion of bonus monies due to him of $766,070, which was diverted to the other shareholders.

- 6 -

[Appellant] also alleges under Count III that [the Law Firm] owes him $1,828.15 for his portion of a contingency fee related to litigation of a workers' compensation case (Drivas). In the underlying case, [Appellant] had initially represented the claimant while still working for [the Law Firm]. After his departure, the claimant chose to retain [Appellant]. Thereafter, a Workers' Compensation decision was issued and later affirmed finding [Appellant's] firm was entitled to all contingency fees due after [Appellant] left [the Law Firm].

Finally, in Counterclaim Count IV, [Appellant] alleges intentional interference with contractual relations….

Trial Court Opinion, 8/8/22, at 6-7.

On February 6, 2018, the Law Firm filed preliminary objections demurring to Counterclaims I (breach of employment agreement), III (Conversion), and IV (interference with contractual relations). The Law Firm also objected to Counterclaim Count IV based on lack of specificity. On April 9, 2018, the trial court sustained the Law Firm's demurrer to Counterclaim Count I, finding as a matter of law that the Law Firm's distribution of bonus funds complied with the Employment Agreement. Trial Court Order, 4/9/18, at 1. Additionally, the trial court concluded "the timeliness of [the Law Firm's] payment for [Appellant's] services in 2015 and reimbursement for business expenses was not in violation of its obligation to [Appellant]." *Id.*

The trial court further sustained the Law Firm's preliminary objection to Counterclaim Count III (conversion) concluding that Lavery, as managing partner, determined the bonus amount in accordance with Appellant's Employment Agreement. *Id.* at 2. The trial court sustained in part the Law Firm's preliminary objection to Counterclaim Count III (conversion), where

Appellant sought a $1,828.15 contingency fee in a worker's compensation case. *Id.* at 2-3.[2] Finally, the trial court sustained the Law Firm's preliminary objection to Counterclaim Count IV for lack of specificity. *Id.* at 2.

On May 10, 2018, after pleadings had closed, Appellant filed a motion for determination of finality for the trial court's preliminary objections rulings. Motion for Determination of Finality, 5/10/18. The trial court denied the motion because Appellant failed to file the motion within 30 days of the order determining preliminary objections, as required by Pa.R.A.P. 341(c)(3). Trial Court Order, 9/6/19.

The matter proceeded through discovery. In late 2021, the parties filed motions for summary judgment, "the disposition of which they believed would help foster a final settlement." Trial Court Opinion, 8/8/22, at 8. On December 13, 2021, the trial court granted, in part, the Law Firm's summary judgment motion:

> [The Law Firm's] motion for Partial Summary Judgment is hereby **GRANTED**; this Court finds as a matter of law that [Appellant] is subject to the re-executed Restricted Stock Agreement (absent the contested one-year termination notice, which shall be determined at trial) and that, if proven to the factfinder, [Appellant] may be held liable either for breach of the Employment Agreement or, in the alternative, under a theory of unjust enrichment.

---

[2] The trial court stated it "will not abrogate the Order of the Worker's Compensation Judge" and limited Appellant's fee consistent with the order. *Id.* at 2-3.

Trial Court Order, 12/13/21, at 1 (bold emphasis in original). The trial court denied Appellant's motion for summary judgment. ***Id.***

Following additional unsuccessful settlement negotiations, Appellant, with the agreement of the Law Firm, filed a motion to vacate the trial court's prior preliminary objections order. Appellant requested the order's re-issuance to allow for a determination of finality under Pa.R.A.P. 341(c), and for inclusion of a statement that immediate appeal would facilitate resolution of the entire case. Motion To Re-Issue Order, 5/24/22, at 2-3.

On May 25, 2022, the trial court entered two orders. The first order vacated the court's prior preliminary objections order. The second order adopted the finality language proposed by Appellant and agreed to by the Law Firm. The new order provided:

> 1. [The Law Firm's] Preliminary Objections to [Appellant's] Counterclaim Count I (Breach of Contract/Executive Attorney and Employment Agreement) is GRANTED. This determination is final. Pursuant to Pa.R.A.P. 341 (c), this Court finds that an immediate appeal would facilitate resolution of this entire case and further finds that there is a significant relationship between the adjudicated and unadjudicated claims, there is a possibility that such issues may be considered by this Court, and an immediate appeal may enhance the prospects of settlement.
>
> 2. [The Law Firm's] Preliminary Objections to [Appellant's] Counterclaim Count III (Conversion) are GRANTED in part. This determination is final. Pursuant to Pa.R.A.P. 341 (c), this Court finds that an immediate appeal would facilitate resolution of this entire case and further finds that there is a significant relationship between the adjudicated and unadjudicated claims, there is a possibility that such issues may be considered by this Court, and an immediate appeal may enhance the prospects of settlement.

3. [The Law Firm's] Preliminary Objections to [Appellant's] Counterclaim Count IV is GRANTED for lack of specificity required by Pa.R.C.P. 1019(a), (b), (f), and (h).

Trial Court Order, 5/25/22. Appellant timely appealed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for review:

1. WHETHER THE TRIAL COURT COMMITTED ERROR WHEN IT GRANTED [THE LAW FIRM]'S PRELIMINARY OBJECTION TO [APPELLANT'S] COUNTERCLAIM COUNT I (BREACH OF CONTRACT/EXECUTIVE ATTORNEY EMPLOYMENT AGREEMENT)[?]

2. WHETHER THE TRIAL COURT COMMITTED ERROR WHEN IT GRANTED [THE LAW FIRM]'S PRELIMINARY OBJECTIONS TO [APPELLANT'S] COUNTERCLAIM COUNT III (CONVERSION)[?]

Appellant's Brief at 3.

Our review of an order determining preliminary objections in the nature of a demurrer is *de novo*, and our scope of review is plenary. **Raynor v. D'Annunzio**, 243 A.3d 41, 52 (Pa. 2020).

We recognize a demurrer is a preliminary objection to the legal sufficiency of a pleading and raises questions of law; we must therefore accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts. A preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted.

**Id.** (quotation marks and citation omitted).

Appellant first argues that the trial court improperly granted the Law Firm's preliminary objection to Appellant's Counterclaim Count I, because the

- 10 -

facts, as pleaded, alleged a breach of contract cause of action. Appellant's Brief at 9. Appellant claims his breach of contract claim is based on the following language of the Employment Agreement:

> The amount of the Incentive Compensation Bonus and the Attorney's and corporation's ability to meet the agreed upon objectives shall be determined by the Corporation's Board of Directors and/or its President and/or its Managing Shareholder in its, his or their sole discretion.

*Id.* Appellant asserts Lavery previously breached the Employment Agreement by not exercising his sole discretion in calculating bonus awards. *See id.* at 10. Instead, Lavery delegated his decision to a shareholder vote, "taking 'sole discretion' out of the equation." *Id.* at 11.

Appellant specifically challenges the trial court's characterization of Appellant's following averment as an admission: "2014 bonus payments were determined by Lavery **in full compliance with the Employment Agreement**[.]" *Id.* at 11 (emphasis added) (quoting Counterclaim Paragraph 65). Appellant argues the trial court erred by disregarding other "well-pleaded facts and the inferences therefrom" in Appellant's Counterclaim I. *Id.* at 12. Appellant asserts the trial court failed to

> appreciate that [Appellant's] Counterclaims allege that there is a process to determine incentive bonus distribution under the Employment Agreement, but that process was not followed when Mr. Lavery involved other parties and delegated the distribution decision to a committee….

*Id.* According to Appellant, the decision of bonus distributions by a shareholder vote constituted breach of the Employment Agreement. *Id.* at 13.

"[T]hree elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and[] (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (citation omitted). Contract interpretation is a question of law. *Davis v. Borough of Montrose*, 194 A.3d 597, 608 (Pa. Super. 2018). Our standard of review is *de novo* and our scope of review is plenary. *Id.* When interpreting a contract, the goal "is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement." *Id.* (citation omitted).

In rejecting Appellant's claim, the trial court stated:

[T]o the extent [Appellant] was seeking additional payment of his 2014 bonus, this Court explained its reasoning for the dismissal of his claims in the 2018 Order:

… [Count I, Breach of Contract] The Court finds that the Managing Shareholder[, Lavery], in his sole discretion, properly determined the method of which [Appellant's] bonus for 2014 would be determined and permissibly determined the amount of [Appellant's] bonus for year 2014 in accord with the Executive Attorney Employment Agreement….

… [Count III, Conversion] The Court again finds that the Managing Shareholder properly and permissibly determined

- 12 -

[Appellant's] bonus in accord with the terms of the Executive Attorney Employment Agreement.

In so holding, this [c]ourt was relying upon the clear and unambiguous language in Section 4(b) of the Employment Agreement, which explicitly stated that **"[t]he amount of the [bonus] and the Attorney's and [Law Firm's] ability to meet the agreed upon objectives shall be determined by the [Law Firm's] Board of Directors and/or its President and/or its Managing Shareholder in its, his or their sole discretion**[.]" (Complaint, Exbt. G) [Appellant] admitted in the pleadings that "[t]he terms of the Employment Agreement indicate that Lavery, as President or Managing Shareholder, was required to determine Bonus payments." (Answer with New Matter, 65) **This clear language reflects that, as applied, Lavery had complete discretion to decide all facets of bonus distribution.** There is no other language in the Employment Agreement otherwise limiting this discretion, including consideration of past discretionary, bonus payment practices. As such, it was clearly within Lavery's sole discretion to delegate the decision on the 2014 bonus distribution to a shareholder vote. As such, this Court found that [Appellant] failed to state a claim for a different bonus distribution than the one made by [the Law Firm] in 2014, which was in full conformity with Section 4(b) of the Employment Agreement.

[The trial court] also held in both Orders that Count IV (intentional interference with contractual relations) should be dismissed. [Appellant] has not sought a determination of finality as to this holding and is thus not pursuing review of it on appeal. As such, [the court] will not be addressing the merits of [the court's] dismissal of Count IV.

Finally, [the court] briefly addresses the remaining claims made by [Appellant] in Counterclaim Count I, relevant to the current issues. In his Count I breach of contract claim, [Appellant], in addition to seeking bonus money, also sought unspecified damages for [the Law Firm's] delayed salary payment and reimbursement for a $3,000 membership fee. This Court, in its 2018 Order, dismissed these claims. **This Court notes that this holding was issued in error[,] inasmuch as [the Law Firm] never raised any objections to these claims; [the Law Firm's] sole objection to Count I was limited to [Appellant's] claim for bonus money. As such, this Court**

- 13 -

**respectfully requests that, to the extent this Court's May 25, 2022 Order encompasses a dismissal of these two claims (delayed salary payment and professional fee), that that decision be reversed and those claims reinstated.**

Trial Court Opinion, 8/8/22, at 10-11 (emphasis added, footnote omitted). The record supports the trial court's determinations, and we discern no error beyond the trial court's inadvertent dismissal of Appellant's claims for the unreimbursed business expense and delayed salary payment. *See id.* Appellant's first issue merits no relief.

In his second issue, Appellant argues the trial court improperly sustained Lavery's preliminary objection to Counterclaim Count I, because the well-pleaded facts established conversion of his share of the bonus funds. Appellant's Brief at 14. Appellant asserts the "bonus funds were **by contract** identified as 'Incentive Bonus' corresponding to the reward of good or strong performance and not weak and significantly deteriorated performance." *Id.* at 15 (emphasis added). Appellant again claims the trial court improperly relied on Paragraph 120 of Appellant's Counterclaim. *Id.* Appellant asserts "it is not clear that [he] cannot prevail." *Id.* Appellant offers no further argument in this regard.

Under Pennsylvania case law, conversion is "the deprivation of another's right of property in, or use or possession of, chattel, or other interference therewith, without the owner's consent and without lawful justification." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n. 3 (Pa. Super. 2000) (quoting *Stevenson v. Economy Bank of Ambridge*,

- 14 -

197 A.2d 721, 726 (Pa. 1964)). A person may incur liability for conversion by "[u]nreasonably withholding possession from one who has the right to it." ***Martin v. National Sur. Corp.***, 262 A.2d 672, 675 (Pa. 1970).

As stated above, the trial court concluded (a) Appellant admitted the Law Firm had complied with the Employment Agreement; and (b) Lavery's delegation of his bonus decision to the shareholders did not breach the Employment Agreement. ***See*** Trial Court Opinion, 8/8/22, at 10-11. Because we discern no error in these determinations, Appellant's second issue does not merit relief. ***See id.***

For the foregoing reasons, we affirm the trial court's dismissal of the portions of Counts I and IV claiming breach of contract, conversion and unjust enrichment based upon the Law Firm's determination of Appellant's 2014 bonus. We reverse the portion of the order dismissing Appellant's claims based upon the Law Firm's failure to reimburse Appellant's business expense and timely pay Appellant's salary, and remand for further proceedings.

Motions denied.  Order affirmed in part and reversed and remanded in part for further proceedings consistent with this memorandum.  Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/13/2023